## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | |
| FTX RECOVERY TRUST, | |
| Plaintiff, | Adv. Pro. No. 25-_____ (KBO) |
| -against- | |
| RYAN SALAME and MICHELLE BOND, | |
| Defendants. | |

## COMPLAINT

Plaintiff FTX Recovery Trust (the "Plaintiff"), through its undersigned counsel, for its Complaint against Ryan Salame ("Salame") and Michelle Bond ("Bond"), alleges the following based upon its personal knowledge and investigation to date as to itself and its own acts, and upon information and belief as to all other matters:

## NATURE OF THE CASE

1.      Plaintiff brings this adversary proceeding ("Adversary Proceeding") to recover property of the Bankruptcy Estate pursuant to Sections 549 and 550 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Md. Code Ann., Com. Law §§ 15-206, 15-207, and 15-210, to (i) avoid the February 28, 2025 transfer via deed of the real

---

[1]      The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

property that Bond and Salame own at 9800 Avenel Farm Drive, Potomac, Maryland 20854 (the "Avenel Property") and (ii) to recover from Defendants the approximately $████ in assets that Bond transferred from Salame's accounts to Bond's accounts immediately prior to the Court's entry of a temporary restraining order.  Plaintiff additionally brings a claim for unjust enrichment under Delaware law.

2.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On October 8, 2024, the Court entered an order confirming the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404] (the "Plan"), which became effective on January 3, 2025 [D.I. 29127] (the "Plan Effective Date").

3.      Upon the Plan Effective Date, all assets of the Debtors, including all claims and causes of action, were transferred to and vested in Plaintiff, a Delaware statutory trust operated for the benefit of creditors arising out of the collapse of FTX Group.[2]  Accordingly, Plaintiff has the authority to file this Complaint to commence, and thereafter to prosecute, this Adversary Proceeding.

4.      Salame abused his senior positions at the FTX Group for personal gain.  As detailed in the pending Complaint filed on November 4, 2024 in *FTX Recovery Trust* v. *Salame*,

---

[2]      The term "FTX Group" means, collectively, the above-captioned debtors and debtors-in-possession, and all affiliates of them that have not filed voluntary Chapter 11 petitions in the United States under the Bankruptcy Code.

Adv. No. 24-50186 (the "<u>Salame Adversary Proceeding</u>") [Salame Adv. D.I. 1],[3] Salame received approximately $98.8 million dollars in fraudulent transfers from the FTX Group.  In or around June of 2022, Salame used approximately $4 million of the fraudulently transferred funds he received from the FTX Group to purchase the Avenel Property, the title to which Salame and Bond originally held as joint tenants with rights of survivorship.  Bond did not contribute any funds toward the purchase of the Avenel Property.

5.      After a criminal investigation by the U.S. Attorney's Office for the Southern District of New York following the collapse of the FTX Group, on September 7, 2023, Salame pleaded guilty to two federal felonies.  On May 28, 2024, Salame was sentenced to 7.5 years in prison and ordered to pay a fine, forfeiture, and restitution.  On October 11, 2024, Salame began serving his 7.5-year sentence at the Federal Correctional Institution, Cumberland.

6.      Shortly before he pleaded guilty, Salame initiated settlement discussions with the Plaintiff to settle its claims against him.  Immediately before Salame reported to prison, Plaintiff learned that Salame had spent approximately $5.248 million in proceeds from the sales of eleven properties that he purchased with Plaintiff's funds and that he was supposed to transfer to Plaintiff as part of the settlement being negotiated.

7.      On November 4, 2024, Plaintiff filed the Complaint commencing the Salame Adversary Proceeding seeking to recover over $98 million of intentional and constructive fraudulent transfers that Salame received, including the approximately $4 million Salame used to purchase the Avenel Property.   [Salame Adv. D.I. 1.]   Contemporaneously with filing the Complaint, Plaintiff filed a Motion for a Preliminary Injunction ("<u>PI Motion</u>") seeking to enjoin Salame from further asset dissipation.  [Salame Adv. D.I. 2.]

---

[3]      Unless otherwise indicated, docket references herein are to the Salame Adversary Proceeding, Adv. Pro. 24-50186, and are hereby incorporated by reference.

8.     On Friday, December 13, 2024, Plaintiff filed a motion for a temporary restraining order (the "TRO Motion"), seeking to enjoin Salame and his agents from dissipating any assets while the PI Motion was pending. [Salame Adv. D.I. 20.] On Monday, December 16, 2024, Salame's counsel informed Plaintiff that Salame would consent to a temporary restraining order. The Court entered a temporary restraining order ("TRO") on December 17, 2024. [Salame Adv. D.I. 26.]

9.     Through expedited discovery in connection with the PI Motion, Plaintiff learned that between December 13, 2024, when Plaintiff filed the TRO Motion, and December 16, 2024 when Salame consented to the TRO, Bond transferred with the intent to avoid the impending TRO approximately $███████ from Salame's accounts to Bond's accounts—which assets Salame had received through fraudulent transfers from Plaintiff. Upon information and belief, Salame and Bond orchestrated a short delay in agreeing to a temporary restraining order to afford Bond additional time to dissipate his remaining liquid assets.

10.     After the Court had entered the TRO, in February 2025, Bond and Salame entered a new deed that modified their ownership rights in the Avenel Property from joint tenants with right of survivorship to tenants by the entirety in order to prevent Plaintiff from reaching the Avenel Property to satisfy a judgment against Salame in the Salame Adversary Proceeding. Following a June 27, 2025 evidentiary hearing on Plaintiff's motion to hold Bond in contempt for, among other things, modifying the deed to the Avenel Property while the TRO was pending, the Court found that Bond and Salame's entry into the new deed violated the TRO and was done with the intent of shielding the Avenel Property from creditor collection.

11.     By this Complaint, Plaintiff seeks to avoid the February 28, 2025 transfer by deed to the Avenel Property and avoid and recover the approximately $██████ that Bond transferred,

on behalf of Salame as his agent pursuant to a power of attorney, from Salame's accounts to Bond's accounts immediately prior to the entry of the TRO.

12. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to, or obligations incurred by, Salame and Bond that are avoidable. Plaintiff reserves the right to amend this Complaint.

## JURISDICTION AND VENUE

13. This Adversary Proceeding relates to the Plaintiff's Chapter 11 Case filed with this Court on the Petition Date. The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

14. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter final orders herein.

15. Venue of this Adversary Proceeding in this District is proper pursuant to 28 U.S.C. § 1409, and venue in this District is consistent with the interests of justice, judicial economy, and fairness.

16. The statutory predicates for the relief requested herein are Sections 549 and 550 of the Bankruptcy Code.

17. This Adversary Proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure because, at a minimum, it seeks, among other things, to recover money or property belonging to Plaintiff's estate. Fed. R. Bankr. P. 7001(1).

18. Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff consents to the entry of final orders and judgments by the Court on these claims to the extent that it is later determined

that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

19.    Plaintiff FTX Recovery Trust is a Delaware statutory trust created and implemented pursuant to the Plan, and the sole owner by assignment of all rights and assets of Debtors under the Plan as confirmed by the Court.

20.    Defendant Ryan Salame was the Chief Executive Officer and Chairman of FTX Digital Markets Ltd. ("FDM"), a wholly owned subsidiary of Debtor FTX Trading Ltd., from approximately September 2021 to November 2022.  Salame is incarcerated at FCI Cumberland and serving his 7.5-year prison sentence.

21.    Defendant Michelle Bond is Salame's wife.[4]  She is currently under indictment in the Southern District of New York for violating federal campaign finance laws.  Bond holds powers of attorney that authorize her, among other things, to access Salame's accounts and make transfers from them.

## FACTUAL ALLEGATIONS

**I.    Salame's Role in the FTX Fraud.**

22.    Prior to the Petition Date, the FTX Group operated trading businesses and cryptocurrency exchanges, including an international cryptocurrency exchange known as "FTX.com."  As detailed in the Salame Adversary Proceeding [Salame Adv. D.I. 1], Salame received approximately $98.8 million in fraudulent transfers from the FTX Group.  With those assets, Salame financed a spending spree, purchasing, among other things, the Avenel Property.

---

[4]    Salame and Bond married on September 28, 2024, approximately two weeks before Salame reported to prison.

23.     After the collapse of the FTX Group, Salame pleaded guilty in federal court to two crimes related to his conduct while working at the FTX Group:  (i) conspiracy to make unlawful political contributions and (ii) conspiracy to operate an unlicensed money transmitting business.  On May 28, 2024, he was sentenced to 7.5 years in prison.[5]

24.     Shortly before he pleaded guilty, Salame initiated settlement discussions with Plaintiff to settle its claims against him.  On the day the Parties were to sign the settlement agreement, Plaintiff learned that Salame had spent approximately $5.248 million in proceeds from the sales of eleven properties (that he purchased with Plaintiff's funds), which he was supposed to turn over to Plaintiff pursuant to the settlement, and as a result the parties did not enter into a settlement agreement.

## II.     The FTX Recovery Trust Files the Salame Adversary Proceeding

25.     On November 4, 2024, Plaintiff filed the Complaint in the Salame Adversary Proceeding seeking to recover over $98.8 million of intentional and constructive fraudulent transfers that Salame received from the FTX Group, including the $4 million Salame used to purchase the Avenel Property, which is all property of the FTX Debtors.  [Salame Adv. D.I. 1.]

## III.    The FTX Recovery Trust Obtains a Temporary Restraining Order to Prevent Salame from Dissipating Assets.

26.     Given that Salame had dissipated $5.248 million of assets promised to Plaintiff, contemporaneously with the filing of the Complaint in the Salame Adversary Proceeding, Plaintiff also filed a PI Motion [Salame Adv. D.I. 2] to enjoin Salame or his agents from taking

---

[5]     Salame was also ordered to forfeit to the United States more than $1.5 billion, to pay restitution to Plaintiff of $5,593,177.91, and to pay a $500,000 criminal fine.  Min. Entry, *United States* v. *Salame*, No. 22-cr-00673 (S.D.N.Y. May 28, 2024).  The preliminary forfeiture order permitted Salame to satisfy his forfeiture obligation by paying $6 million in cash to the United States and by forfeiting certain assets.  *United States* v. *Salame*, No. 22-cr-00673 (S.D.N.Y. Sept. 7, 2023), ECF No. 268.

any steps to transfer, sell, or otherwise dissipate his assets without Court approval. [Salame Adv. D.I. 2 ¶ 2(a).]

27.     On Thursday, December 12, 2024, the Court held a status conference to discuss the briefing schedule for the PI Motion. [Salame Adv. D.I. 18.] During that hearing, the Court asked whether Salame would consent to a temporary restraining order pending the Court's determination of the PI Motion. [Salame Adv. D.I. 44 Ex. 3 (Dec. 12 Hr'g Tr.) at 177:1-3, Ex. 4.] On December 13, Salame declined to consent to a temporary restraining order. [Salame Adv. D.I. 44 Ex. 4.] Later on Friday, December 13, 2024, Plaintiff filed the TRO Motion. [Salame Adv. D.I. 20.]

28.     On December 16, 2024, Salame informed Plaintiff that he would consent to the temporary restraining order. [Salame Adv. D.I. 44 Ex. 6.] On December 17, 2024, the Court entered the TRO which provided that "Salame, his attorneys, agents, assigns, or any other person acting in concert or participation with him, are prohibited from taking any steps to transfer, sell, spend, assign, exchange, convert, dissipate, use, move, or otherwise modify any rights related to any of his assets, without prior Court approval, pending a hearing and determination on the [ ] P.I. Motion." [Salame Adv. D.I. 26.]

## IV.     Salame and Bond's Dissipation of Assets Between December 13 and December 17, 2024.

29.     During expedited discovery on the PI Motion, Plaintiff learned that between December 13, 2024, when Salame initially declined to consent to a temporary restraining order, and December 17, 2024, when the Court entered the TRO, Bond transferred approximately $▮▮▮▮ of assets from Salame's accounts—which contained the proceeds of assets Salame had fraudulently obtained prepetition from Plaintiff—to Bond's accounts.

30.     After Plaintiff learned of Bond's dissipation of assets in Salame's accounts, Plaintiff filed a Motion to Hold Michelle Bond in Civil Contempt for Violating the Court's December 17, 2024 Temporary Restraining Order and/or for Sanctions (the "Contempt Motion") [Salame Adv. D.I. 136].  Following an evidentiary hearing on June 27, 2025 on Plaintiff's Contempt Motion and PI Motion (the "June 27 Hearing"), during which Bond testified and was subject to cross-examination, this Court found that "there [is] no dispute that these transfers occurred and that they were done in an attempt to avoid a future asset freeze so that Ms. Bond would have access to the funds to live."  (Transcript of June 27, 2025 Evidentiary Hearing at 245:6-9, Salame Adversary Proceeding ("June 27 Hr'g Tr.").)

31.     During cross-examination at the June 27 Hearing, Bond admitted that between December 13 and 16, 2024, she transferred approximately $■■■■ from Salame's accounts to Bond's accounts.

32.     Specifically, Bond admitted that, on December 13, 2024, she wrote herself a check for $■■■ from Salame's Greylock ■■■ account and deposited that check into her Wells Fargo account.  (June 27 Hr'g Tr. at 44:24-45:6 & Pl.'s Exs. 80, 85.)  Bond confirmed that the $■■■ check cleared on December 16, 2024.  (Id. at 45:7-16 & Pl.'s Exs. 80, 85.)

33.     Bond also admitted that, between December 13 and 16, 2024, she accessed Salame's Crypto.com account, transferred ■■■ Bitcoin—worth $■■■■■—from Salame's Crypto.com account to her Coinbase account, sold the ■■■ Bitcoin for $■■■■■, and then deposited $■■■■ of those funds into her Wells Fargo account.  (June 27 Hr'g Tr. at 33:6-14, 37:8-14, 38:14-21 & Pl.'s Exs. 79, 80.)[6]

---

[6]     In addition to the transfers to her bank account, Bond admitted that she spent an additional $■■■ on additional expenses, including on credit cards, other bills, and law firm retainers.  (June 27 Hr'g Tr. at 45:17-46:19,

34.     During the June 27 Hearing, Plaintiff presented evidence showing that between December 13 and 17, 2024, Bond dissipated more than $████ of Salame's assets—virtually all of the assets in Salame's accounts—including transferring $████ of that amount to her own bank account.  At the conclusion of the Court's June 27 Hearing on Plaintiff's Contempt Motion, the Court found that "as to Ms. Bond's actions as agent for Mr. Salame to transfer approximately $████ worth of Mr. Salame's assets to herself or third parties prior to the entry of the temporary restraining order, there [is] no dispute that these transfers occurred and that they were done in an attempt to avoid a future asset freeze."  (June 27 Hr'g Tr. at 245:3-8.)  Further, the Court found that there was a risk of irreparable harm to Plaintiff "because Mr. Salame has demonstrated it is his intention and ability to liquidate his assets and dissipate them. The most recent thoughtfully planned pre-TRO transfers are a sufficient example of that intention and willingness to act."  (*Id.* at 249:5-9.)

## V.     Defendants Funded Their Purchase of the Avenel Property with Debtor Funds and Its Transfer Was a Fraudulent Attempt to Shield It from Recovery by Plaintiff.

35.     In June 2022, Salame closed on the purchase of the Avenel Property.  The purchase price of the Avenel Property was $3.995 million.

36.     The funds for the purchase of the Avenel Property came from Salame's Greylock ██ account.  ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

47:22-48:21, 49:8-11, 49:13-50:5, 50:20-52:1, 53:5-12, 53:15-54:3, 54:6-9 & Exs. 83-85, 87.)  Plaintiff reserves all rights with respect to those transfers.

37.  ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████  Salame

therefore purchased the Avenel Property using an account that was funded overwhelmingly by the FTX Group.  Those funds are subject to Plaintiff's claims for intentional and constructive fraudulent transfer, which are currently pending in the Salame Adversary Proceeding.

38.  The original deed to the Avenel Property, dated June 6, 2022, and recorded on July 5, 2022, reflects that Defendants owned the Avenel Property in Fee Simple, as Joint Tenants With Right of Survivorship.

39.  During the June 27 Hearing, Bond admitted that Salame paid the entirety of the approximately $4 million purchase price for the Avenel Property.  (June 27 Hr'g Tr. at 127:13-15.)  Bond also confirmed that the Avenel Property is still worth approximately $4 million and is ████████████████████████████.  (*Id.* at 127:16-19, 128:5-7.)

## VI.  Defendants Modified the Deed to the Avenel Property in Violation of the TRO

40.  On cross-examination during the June 27 Hearing, Bond admitted that she and Salame had executed a new deed to the Avenel Property in early 2025 after the TRO had been entered.  (*Id.* at 129:2-4; 130:10-12.)

41.  Bond admitted that the new deed modified Bond and Salame's ownership rights in the Avenel Property from joint tenants with right of survivorship to tenants by the entirety. (*Id.* at 129:5-9.)

42.  Bond admitted that she did not seek permission from the Court to modify the deed, notwithstanding the existence of the TRO.  (*Id.* at 129:24-130:1.)

43.  Bond further admitted that in the Affidavit of No Consideration accompanying the new deed, she had certified under penalty of perjury that the Avenel Property was "free and

clear of all liens." (*Id*. at 130:13-19.)  However, Bond admitted that she was aware there was a lien on the Avenel Property as a result of Salame's unpaid criminal fine.  (*Id*. at 130:24-131:2.)

44.     At the conclusion of the June 27 Hearing, the Court found that "[t]he evidence indicates that the [deed] transfer was done by Ms. Bond and Mr. Salame in order to shield the home from creditor collection." (*Id*. at 248:9-11.)

45.     Specifically, the Court found that prior to the deed modification "Salame had the right to sell his 50 percent ownership right in the house without Ms. Bond's consent.  Now, following the change of ownership to joint tenants by the entirety, Mr. Salame may no longer do so." (*Id.* at 247:15-23.)

## CAUSES OF ACTION

### COUNT ONE
### AVOIDANCE OF POST-PETITION TRANSFERS PURSUANT TO 11 U.S.C. § 549
### (AGAINST ALL DEFENDANTS)

46.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 45 as if fully set forth herein.

47.     The relevant transfers consist of:  (1) Bond's transfer, on behalf of Salame as his agent pursuant to a power of attorney, of approximately $██████ of assets from Salame's accounts to Bond's accounts between December 13 and 16, 2024, and (2) Bond and Salame's February 2025 transfer of the Avenel Property by deed from themselves as joint tenants to themselves as tenants by the entirety for zero consideration.

48.     Bond's transfer on behalf of Salame pursuant to a power of attorney of approximately $█████ of assets from Salame's accounts, and Bond and Salame's transfer of the Avenel Property by deed from themselves as joint tenants to themselves as tenants by the entirety, each occurred after the commencement of these Chapter 11 cases.

-12-

49.     The Avenel Property constitutes property of the Debtors' estate pursuant to Section 541(a)(1) of the Bankruptcy Code, which defines "property of the estate" to include, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." 11 U.S.C. § 541(a). The Avenel Property is property of the estate because Plaintiff is seeking to avoid the initial fraudulent transfers of assets used to purchase the Avenel Property.   The approximately $███ likewise constitutes property of the estate because it consists of funds subject to avoidance as fraudulent transfers from Plaintiff's estate.

50.     Bond's transfer on behalf of Salame pursuant to a power of attorney of approximately $███ of assets from Salame's accounts into her account, and Bond and Salame's transfer of the Avenel Property by deed from themselves as joint tenants to themselves as tenants by the entirety were not authorized by the Court or under the Bankruptcy Code.

51.     Bond's transfer of approximately $███ of assets from Salame's accounts into her account and Bond and Salame's transfer of the Avenel Property by deed from themselves as joint tenants to themselves as tenants by the entirety therefore constituted post-petition transfers of property of the estate that are avoidable under 11 U.S.C. § 549.

52.     This Court determined at the June 27 Hearing that Bond and Salame's modification of the deed to the Avenel Property and Bond's transfer on behalf of Salame pursuant to a power of attorney of approximately $███ of assets from Salame's accounts occurred and were intended to prevent Plaintiff from reaching those assets to satisfy a judgment against Defendant Salame in the Salame Adversary Proceeding.

**COUNT TWO**
**PROPERTY RECOVERY PURSUANT TO 11 U.S.C. § 550(a)(1)**
**(AGAINST ALL DEFENDANTS)**

53.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 52 as if fully set forth herein.

54.     The Complaint in the Salame Adversary Action alleges actual and constructive initial fraudulent transfers from the FTX Group to Salame in the amount of $98.8 million, including the $4 million used to purchase the Avenel Property.  Salame and Bond initially held the deed to the Avenel Property as tenants in common.

55.     As alleged above, the relevant subsequent transfers consist of:  (1) Bond's transfer on behalf of Salame pursuant to a power of attorney of approximately $███████ of assets from Salame's accounts into Bond's accounts, and (2) Bond and Salame's transfer of the Avenel Property by deed from themselves as joint tenants to themselves as tenants by the entirety for zero consideration.

56.     Pursuant to 11 U.S.C. § 550(a)(1), Plaintiff is entitled to recover Bond's receipt of approximately $███████ (plus interest) as a subsequent transferee resulting from her transfer, on behalf of Salame pursuant to a power of attorney, of those assets from Salame's accounts into Bond's accounts because those funds consisted of assets that were fraudulently transferred to Salame by Plaintiff and that are the subject of the Salame Adversary Proceeding.

57.     Pursuant to 11 U.S.C. § 550(a)(1), Plaintiff is entitled to recover from Defendants the full value of the Avenel Property (plus interest) as a subsequent transferee resulting from their receipt of the Avenel Property by deed as tenants by the entirety through a transfer made by themselves.

58.     Because Defendants are the subsequent transferees for whose benefit such transfers were made, Plaintiff may recover from Defendants the full value of the Avenel Property

and the approximately $██████, pursuant to 11 U.S.C. § 550(a)(1), plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of the FTX Recovery Trust.

**COUNT THREE**
**ACTUAL FRAUDULENT CONVEYANCES PURSUANT TO MD. CODE ANN., COM. LAW §§ 15-207 & 15-210**
**(AGAINST ALL DEFENDANTS)**

59.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 58 as if fully set forth herein.

60.     As alleged above, the relevant transfers consist of: (1) Bond's transfer on behalf of Salame pursuant to a power of attorney of approximately $██████ of assets from Salame's accounts to Bond's accounts and (2) Bond and Salame's transfer of the Avenel Property by deed from themselves as joint tenants to themselves as tenants by the entirety for zero consideration.

61.     Pursuant to Md. Code Ann., Com. Law § 15-207, a conveyance of any interest in property made with actual intent to hinder, delay, or defraud present or future creditors is fraudulent as to both present and future creditors.

62.     By virtue of the Salame Adversary Proceeding, Plaintiff is a creditor of Defendant Salame within the meaning of Md. Code Ann., Com. Law §§ 15-201(d), 15-207.

63.     Bond's transfer on behalf of Salame pursuant to a power of attorney of approximately $██████ of assets from Salame's accounts and Bond and Salame's modification of the deed to the Avenel Property were conveyances within the meaning of Md. Code Ann., Com. Law § 15-201(c) and contemplated under Md. Code Ann., Com. Law § 15-207.

64.     Bond's transfer on behalf of Salame pursuant to a power of attorney of approximately $██████ of assets from Salame's accounts and Bond and Salame's modification of the deed to the Avenel Property were made with the actual intent to hinder, delay, or defraud

-15-

Plaintiff. Specifically, the Court found during the June 27 Hearing that Bond and Salame's modification of the deed to the Avenel Property was intended to prevent Plaintiff from reaching the Avenel Property to satisfy a judgment against Defendant Salame in the pending Salame Adversary Proceeding. Similarly, Bond's transfer on behalf of Salame pursuant to a power of attorney of approximately $███ of assets from Salame's accounts was intended to prevent Plaintiff from reaching those funds to satisfy a judgment against Defendant Salame in the Salame Adversary Proceeding.

65.      Pursuant to Md. Code Ann., Com. Law § 15-210(a), if a conveyance is fraudulent as to a creditor whose claim has not matured, he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured. As such, Bond and Salame are proper Defendants in this action.

66.      Under Md. Code Ann., Com. Law § 15-210(b), the Court is authorized to set aside the conveyance or enter any order which the circumstances of the case require. Accordingly, Bond's transfer on behalf of Salame pursuant to a power of attorney of approximately $███ of assets from Salame's accounts to Bond's accounts and Bond and Salame's modification of the deed to the Avenel Property should be set aside and avoided as fraudulent conveyances pursuant to Md. Code Ann., Com. Law §§ 15-207 and 15-210. Alternatively, pursuant to Md. Code Ann., Com. Law § 15-210(b)(4), the Court should award Plaintiff damages for Defendants' fraudulent conveyances.

**COUNT FOUR**
**CONSTRUCTIVE FRAUDULENT CONVEYANCES PURSUANT TO MD. CODE ANN.,**
**COM. LAW §§ 15-206 & 15-210**
**(AGAINST ALL DEFENDANTS)**

67.      Plaintiff repeats and realleges the allegations in paragraphs 1 through 66 as if fully set forth herein.

68.     As alleged above, the relevant transfers consist of:  (1) Bond's transfer on behalf of Salame pursuant to a power of attorney of approximately $▮▮▮▮ of assets from Salame's accounts to Bond's accounts and (2) Bond and Salame's transfer of the Avenel Property by deed from themselves as joint tenants to themselves as tenants by the entirety for zero consideration.

69.     Pursuant to Md. Code Ann., Com. Law § 15-206, a conveyance of property made without fair consideration is fraudulent as to both present and future creditors where the person who makes the conveyance intends or believes that he will incur debts beyond his ability to pay as they mature.

70.     By virtue of the Salame Adversary Proceeding, Plaintiff is a creditor of Defendant Salame within the meaning of Md. Code Ann., Com. Law §§ 15-201(d) and 15-206.  Defendant Bond, as a recipient of the fraudulently transferred property, is subject to this Court's power to set aside the conveyance.

71.     Defendants owe Plaintiff a "Debt" within the meaning of Md. Code Ann., Com. Law § 15-201(e).

72.     Bond's transfer on behalf of Salame pursuant to a power of attorney of approximately $▮▮▮▮ of assets from Salame's accounts to Bond's accounts and Bond and Salame's modification of the deed to the Avenel Property were conveyances within the meaning of Md. Code Ann., Com. Law § 15-201(c) and contemplated under Md. Code Ann., Com. Law § 15-206.

73.     Bond's transfer on behalf of Salame pursuant to a power of attorney of approximately $▮▮▮▮ of assets from Salame's accounts to Bond's accounts and Bond and Salame's modification of the deed to the Avenel Property were made without consideration.

74.     Bond transferred on behalf of Salame pursuant to a power of attorney approximately $██████ of assets from Salame's accounts to Bond's accounts and Bond and Salame modified the deed to the Avenel Property with the intent or belief that Defendant Salame would incur debts beyond his ability to pay.  Specifically, Defendants made the transfer with the belief or intent that doing so would leave Defendant Salame with insufficient assets to satisfy a judgment in the pending Salame Adversary Proceeding, which seeks to recover over $98 million in fraudulent transfers from Defendant Salame.

75.     Pursuant to Md. Code Ann., Com. Law § 15-210(a), if a conveyance is fraudulent as to a creditor whose claim has not matured, he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured.

76.     Under Md. Code Ann., Com. Law § 15-209, a proper defendant includes "any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase or one who has derived title immediately or immediately from such a purchaser."  As such, Salame and Bond are proper Defendants in this Action.

77.     Under Md. Code Ann., Com. Law § 15-210(b), the Court is authorized to set aside the conveyance or enter any order which the circumstances of the case require. Accordingly, Bond's transfer on behalf of Salame pursuant to a power of attorney of approximately $██████ of assets from Salame's accounts to Bond's accounts and Bond and Salame's modification of the deed to the Avenel Property should be set aside and avoided as fraudulent conveyances pursuant to Md. Code Ann., Com. Law §§ 15-207 and 15-210. Alternatively, pursuant to Md. Code Ann., Com. Law § 15-210(b)(4), the Court should award Plaintiff damages for Defendants' fraudulent conveyances.

### COUNT FIVE
### UNJUST ENRICHMENT UNDER DELAWARE LAW
### (AGAINST DEFENDANT SALAME)

78.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 77 as if fully set forth herein.

79.     As alleged above, through Bond and Salame's unjustified entry into the new deed to the Avenel Property, Defendants modified their ownership interests in the Avenel Property from joint tenants to tenants by the entirety.

80.     Under the circumstances as alleged herein, allowing Salame to retain the property rights afforded to tenants by the entirety would unjustly enrich him.  The unjust enrichment of Salame, to the detriment of Plaintiff, has caused Plaintiff damages and/or invaded Plaintiff's protected interests.

81.     Should the Court find that Plaintiff has no remedy at law, Plaintiff alternatively seeks recovery in equity.

### COUNT SIX
### UNJUST ENRICHMENT UNDER DELAWARE LAW
### (AGAINST DEFENDANT BOND)

82.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 81 as if fully set forth herein.

83.     As alleged above, through Bond and Salame's unjustified entry into the new deed to the Avenel Property, Defendants modified their ownership rights in the Avenel Property from joint tenants to tenants by the entirety.

84.     Under the circumstances as alleged herein, allowing Bond to retain the property rights of tenants by the entirety would unjustly enrich her.  The unjust enrichment of Bond, to the detriment of Plaintiff, has caused Plaintiff damages and/or invaded Plaintiff's protected interests.

85.     Further, as alleged above, Bond without justification received approximately $███████ of assets from Salame's accounts that she transferred on behalf of Salame pursuant to a power of attorney to her bank account.

86.     Under the circumstances as alleged herein, allowing Bond to retain the funds she transferred from Salame's accounts to Bond's accounts would unjustly enrich her.  The unjust enrichment of Bond, to the detriment of Plaintiff, has caused Plaintiff damages and/or invaded Plaintiff's protected interests.

87.     Should the Court find that Plaintiff has no remedy at law, Plaintiff alternatively seeks recovery in equity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

88.     Enter an order that the transfers addressed herein are avoidable fraudulent transfers under 11 U.S.C. §§ 549 or 550 and/or Md. Code Ann., Com. Law §§ 15-206, 15-207, and/or 15-210;

89.     Enter an order avoiding the February 28, 2025 transfer by deed to the Avenel Property;

90.     Charge upon Salame and Bond, as tenants by the entirety, a constructive trust of the Avenel Property for the benefit of Plaintiff's estate;

91.     Order Salame and Bond, as constructive trustees and tenants by the entirety, to convey all of their right, title, and interest in the Avenel Property to Salame and Bond, as joint tenants with rights of survivorship;

92.     Award Plaintiff (a) return of the $███████; (b) monetary damages under 11 U.S.C. §§ 549 or 550 and/or Md. Code Ann., Com. Law §§ 15-206, 15-207, and/or 15-210 reflecting the value of the avoidable transfers alleged herein (plus the value of any additional avoidable

transfers Plaintiff learns, through discovery or otherwise, were made to Defendants); (c) preservation for the benefit of Plaintiff's estate of the avoidable transfers alleged herein or the value thereof; and/or (d) equitable relief, as necessary, to put the FTX Recovery Trust in the position it would have been in had the avoidable transfers alleged herein not occurred;

93.     Award Plaintiff its attorneys' fees, pre- and post-judgment interests, and costs of suit; and

94.     Award Plaintiff all other relief, at law or equity, to which it may be entitled.

Dated: August 28, 2025
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Howard W. Robertson IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       cobb@lrclaw.com
       mcguire@lrclaw.com
       robertson@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email:  wheelers@sullcrom.com
       gluecksteinb@sullcrom.com
       dunnec@sullcrom.com
       crokej@sullcrom.com

*Counsel for Plaintiff*